UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ANITA DUSTERHOFT,

                Plaintiff,

v.                                                          Case No. 5:07-cv-466-Oc-10GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                Defendant.
_____/

## **REPORT AND RECOMMENDATION**[1]

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for a period of disability and disability insurance benefits. (Doc. 1.) The Commissioner has answered (Doc. 10) and both parties have filed briefs outlining their respective positions. (Docs.18 & 21.) For the reasons discussed below, the Commissioner's decision is due to be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g).

## **I. PROCEDURAL HISTORY**

On April 1, 2003, Plaintiff filed an application for a period of disability and disability insurance benefits claiming a disability onset date of May 1, 2001. (R. 67-69.) Plaintiff's application was denied initially (R. 42-43), and upon reconsideration. (R. 39-40.) Thereafter, Plaintiff timely pursued her administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

("ALJ"). (R. 38.) The ALJ conducted Plaintiff's administrative hearing on August 23, 2005. (R. 370-92.) On December 11, 2006, the ALJ issued a decision unfavorable to Plaintiff. (R. 11-25.) The Appeals Council denied Plaintiff's request for review (R. 5-7) and Plaintiff filed the instant appeal to this Court on November 21, 2007. (Doc. 1.)

## II. **STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[4] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[2] See 42 U.S.C. § 405(g).

[3] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[5] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

reasoning to determine that the Commissioner properly applied the law.[6] The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[7] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9] First, if a claimant is working at a substantial gainful activity, she is not disabled.[10] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[11] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[12] Fourth, if a claimant's impairments do not prevent her from doing past

---

[6] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[8] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] 20 C.F.R. § 404.1520(b).

[11] 20 C.F.R. § 404.1520(c).

[12] 20 C.F.R. § 404.1520(d).

3

relevant work, she is not disabled.[13] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[18] In a situation where both exertional and non-exertional impairments are

---

[13] 20 C.F.R. § 404.1520(e).

[14] 20 C.F.R. § 404.1520(f).

[15] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[16] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[17] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[18] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

4

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[21] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[22]

### III. SUMMARY OF THE RECORD EVIDENCE

Plaintiff was born on November 7, 1957 and was forty seven (47) years old at the time of the hearing. (R. 372.) Plaintiff dropped out of school in the eighth grade and had past relevant work as a secretary, maid, reservation specialist, telemarketer and health aide in a nursing home. (R. 162, 375-78.) Plaintiff contends that she has been unable to work since May 1, 2001 due to migraines, confusion and mental illness. (R. 90).

Plaintiff received treatment at the Emergency Room on numerous occasions for various injuries, including muscular back strain, lumbar strain, shoulder pain, as well as migraines, epigastric pain and anxiety. (R. 242-43, 249-52, 253-55, 256-57, 266-75,

---

[19] Walker at 1003.

[20] Wolfe at 1077-78.

[21] See id.

[22] See Doughty at 1278 n.2.

276-79, 258-65, 329-32.) In each case, Plaintiff was discharged with a prescription for pain medication, muscle relaxers or other appropriate medication.

Plaintiff has a history of migraine headaches and was treated at Coastal Neurology from February 20, 2001 through August 23, 2001. (R. 153A-59, ) From April 19, 2002 until January 26, 2007, Plaintiff was treated by Ralph J. Zwolinski, M.D. for cervicalgia, lumbar radiculopathy, migraine, depression, anxiety and panic attacks. (280-96, 365-66.) Over the course of treatment, Dr. Zwolinski prescribed medication for Plaintiff's migraines, depression, anxiety and panic attacks. (R. 280, 282, 285, 287, 290, 291, 292, 293, 365, 366.)

On April 9, 2003, Plaintiff was treated at the Orthopaedic Clinic of Daytona Beach for right shoulder and arm pain. Plaintiff was diagnosed with right shoulder adhesive capsulitis and directed to attend physical therapy. (R. 216-19.) On September 17, 2003, Plaintiff reported that she had not participated in therapy and that her pain had increased. (R. 214-15.) Plaintiff was diagnosed with severe right shoulder adhesive capulitis and directed to initiate a course of supervised physical therapy.

On February 5, 2004, Plaintiff was in an automobile accident. The next day Plaintiff went to the Emergency Room with complaints of upper back pain and headaches. (R. 238-39.) X-rays of the cervical spine were negative for any bony abnormality and she was discharged with prescriptions for valium and lortab. Following the automobile accident, Plaintiff was seen by Dr. Randall J. Rochester, a chiropractor. (R. 228-35.) On February 23, 2004, Plaintiff returned to the Orthopaedic Clinic of Daytona Beach, complaining of neck pain, low back pain and daily headaches. (R. 210-

13.) Plaintiff reported pain radiating into her legs, weakness in her legs and increased pain with ambulation and any type of movement. After reviewing x-rays of the thoracic and cervical spine, the doctor's impression was acute cervical/thoracic/lumbar strain syndrome and pre-existing thoracic/lumbar spine mild degenerative disc disease and osteoarthritis and thoracic spine mild scoliosis.

On March 14, 2004, non-examining state agency physician, Daria F. Marranzini, M.D. completed a Physical RFC Assessment. (R. 220-27.) Marranzini opined that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand and/or walk for about 6 hours in an 8-hour workday, sit for a total of about 6 hours in an 8-hour workday and push and/or pull with limitation in the upper extremities. Marranzini found that Plaintiff was limited to occasional crawling; frequent climbing, balancing, stooping, kneeling, and crouching; and limited in her ability to reach overhead. He found that Plaintiff should avoid concentrated exposure to noise and vibration.

On July 9, 2003, William P. Friedenberg, Ph.D. performed a consultative evaluation. (R. 162-63.) Plaintiff reported migraine headaches, possible CVA with memory impairment, right shoulder condition and emotional problems in the form of anxiety and depression. Dr. Friedenberg noted that Plaintiff's verbal communication ranged from being clear and logical in content to being "somewhat confused." Plaintiff had trouble understanding questions and frequently asked for questions to be repeated. Plaintiff's eye contact was appropriate, affect was normal, manner cooperative and she was fairly well-oriented as to time, place and person. She reported that her mood was anxious and periodically depressed and that she tries to keep herself from crying all of

7

the time. Plaintiff reported memory difficulties for both remote and recent events. She was able to remember zero out of five objects presented verbally after a mediated delay of five minutes and she was able to remember one object with prompting; and Plaintiff could recall 2 digits forward and 2 digits backward. Dr. Friedenberg concluded that Plaintiff's overall memory and concentration were "estimated from current data to be significantly impaired", her ability to calculate simple arithmetic problems was poor, her judgment was mostly preserved and her ability to abstract meanings of proverbs was poor. Dr. Friedenberg diagnosed Plaintiff with 294.8 Amnestic Disorder NOS, Rule Out: 290.43 Vascular Dementia; 311 Depressive Disorder NOS; 309.0 Adjustment Disorder With Depressed Mood; migraine headaches; shoulder condition; and Rule Out: CVA on Axis III. Dr. Friedenberg concluded that Plaintiff was not capable of managing her own funds due to her memory impairment.

On November 3, 2003, J. Jeff Oatley, Ph.D. performed a consultative psychological evaluation. (R. 172-74.) Plaintiff reported that her memory was "shot" since she had a stroke (TIA) a year ago. Plaintiff denied any counseling from a mental health professional and that she has received psychopharmacological treatment from primary health care providers. Dr. Oatley administered the Wechsler Memory Scale and Plaintiff performed worst on working memory and best on visual delayed memory. Dr. Oatley's diagnosis was Rule Out Borderline Intellectual Functioning, DSM-IV V62.89 as indicated by an individually administered intelligence test and adaptive behavior; Rule Out Transient Ischemic Attack; and Rule Out Shoulder problems limiting range of motion. Dr. Oatley noted that Plaintiff prepares some meals, is self-sufficient in bathing

8

and dressing, can do all household chores including laundry, enjoys working on the internet, using Play Station and visiting with friends but needs assistance managing her finances.

On August 27, 2003, a non-examining state agency physician performed a Physical Residual Functional Capacity ("RFC") Assessment (R. 164-71) and found that Plaintiff could occasionally lift 50 pounds, frequently life 25 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and push and/or pull with limitation in the upper extremities. Plaintiff was limited to occasional crawling and reaching overhead.

On October 22, 2003, non-examining state agency psychologist, Michael Zelenka, Ph.D. completed a Psychiatric Review Technique. (R. 175-87.) Based on his review of the medical records, Zelenka noted that Plaintiff's affective disorders and anxiety-related disorders resulted in mild restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and insufficient evidence of episodes of decompensation. He also completed a Mental RFC in which he opined that Plaintiff was moderately limited in the ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and set realistic goals or make plans independently of others. (R. 188-91.)

On February 1, 2004, non-examining state agency psychologist, Ronald F. Boddicker, Ph.D. completed a Psychiatric Review Technique. (R. 192-205.) Boddicker opined that Plaintiff's organic mental disorders, affective disorders and anxiety-related disorders resulted in moderate difficulties in maintaining concentration, persistence or pace, mild restriction of activities of daily living and mild difficulties in maintaining social functioning. Boddicker also completed a Mental RFC in which he noted that Plaintiff was moderately limited in her ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. In all other areas Boddicker found that Plaintiff was not significantly limited.

On December 9, 2005, Plaintiff was referred to Anuj Sharma, D.O. at Southeastern Rehabilitation Medicine for a consultative evaluation. (R. 343-46.) Plaintiff reported a history of anxiety attacks and anxiety disorder as well as severe back pain following her February 5, 2005 automobile accident. Dr. Sharma's impression was cervical and lumbar strain from motor vehicle accident that had essentially resolved, history of general anxiety disorder and anxiety attacks and bilateral flat foot. He opined that Plaintiff's issues may be related to general anxiety disorder and anxiety attacks more so than from physical impairments. He further opined that Plaintiff would be able

to function in a work setting at a "medium to full duty level based on this examination" and recommended treatment through a psychologist or psychiatrist.

On December 28, 2005, Plaintiff was referred to Linda S. Bojarski, Psy.D. for general personality evaluation and memory testing. (R. 309-12.) Plaintiff reported that she had daily migraine headaches, depression, suicidal ideation, anxiety, and memory difficulty. Plaintiff's speech was slow and she displayed confusion while answering questions. She recited the alphabet correctly, made one error on a serial three addition task, and became hopelessly confused while counting backward from twenty to one. Plaintiff's reading skills were in the 12th percentile for her peer group and her general memory skills were in the 2nd percentile for her peer group. Personality testing was invalid and suggested symptom exaggeration as a cry for help from an extremely disturbed individual or an attempt to create the impression of severe mental illness for secondary gain. Dr. Bojarski opined that Plaintiff does not appear cognitively capable of independent management of funds. She diagnosed Plaintiff with Major Depressive Disorder, Recurrent; Anxiety Disorder Not Otherwise Specified; Personality Disorder Not Otherwise Specified with Histrionic & Dependent Features; and (Rule Out) Borderline Intellectual Functioning.

Dr. Bojarski completed a "Medical Source Statement Of Ability To Do Work-Related Activities (Mental)" in which she found that Plaintiff's ability to understand, remember, and carry out instructions was affected by her impairment. (R. 313.) Specifically, Dr. Bojarski opined that Plaintiff had moderate limitations in her ability to

11

understand and remember detailed instructions, carry out detailed instructions, and make judgments on simple work-related decisions.

On July 17, 2006, Kenneth Ng, M.D. performed a consultative medical evaluation. (R. 336-37.) Plaintiff reported pain in her left rib cage resulting from an automobile accident in February 2005, episodic anxiety, depression, migraines, constant low back pain and memory issues. Dr. Ng completed a Medical Source Statement Of Ability To Do Work-Related Activities in which he opined that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, and could sit for about 6 hours in an 8- hour workday.(R. 339-42.) Plaintiff was limited in her ability to push and/or pull in the upper extremities but had no limitations on standing or walking.[23] He also noted that Plaintiff could only occasionally climb and balance; and never kneel, crouch, crawl or stoop. Dr. Ng. also concluded that Plaintiff was limited in her ability to reach in all directions, handle, finger and feel as well as being limited in her ability to be exposed to temperature extremes, noise, dust, vibration, humidity/wetness, hazards, and fumes, odors, chemicals and gases.

At the hearing on August 23, 2005, Plaintiff testified that she has anxiety attacks, depression, lumbar radiculopathy, back pain, migraines, blurry vision, dizziness, difficulty walking, and difficulty concentrating. (R. 376-90.) She testified that she can stand for 10 to 15 minutes and then she has to sit down and she can only lift five pounds. (R. 386-87.) Plaintiff testified that Ultram helps with her migraine headaches,

---

[23] On the form Dr. Ng. noted that Plaintiff was limited to standing and/or walking less than 2 hours in an 8-hour workday. However, he explained in a letter dated July 27, 2006 that this was an error and that Plaintiff had no limitations on standing or walking. (R. 338.)

and that she takes Ambien for sleep, Lorcet for pain and Ativan/Lorazepam for anxiety. (R. 382-83.)

The ALJ determined that claimant suffers from migraine headaches, mood disorder and organic mental disorder. (R. 17.) While these impairments are severe, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4. (R. 21.)

The ALJ found that Plaintiff retains the physical RFC for sedentary work. (R. 21.) In making his RFC finding, the ALJ found that Plaintiff's "mental impairments moderately limit her ability to maintain attention and concentration for extended periods of time." After finding that Plaintiff could not perform her past relevant work, the ALJ used Rules 201.18-201.19 of the Medical-Vocational Guidelines (the "grids")[24] and found that Plaintiff was not disabled because Plaintiff could perform substantially all of the requirements of sedentary work. (R. 25.) The ALJ did not consult a vocational expert.

## IV. DISCUSSION

Plaintiff raises three arguments on appeal – (1) the ALJ erred in finding that Plaintiff has the RFC to perform sedentary work and only found moderate limitations in her ability to maintain attention and concentration for extended periods of time; (2) the ALJ erred in relying solely on the grids in light of Plaintiff's mental impairments; and (3) the ALJ improperly evaluated Plaintiff's subjective complaints. All three of these

---

[24] 20 CFR Pt. 404, Subpt. P. App.2 Rules 202.18 and 202.11.

13

arguments are related to the ALJ's failure to properly evaluate the limitations resulting from Plaintiff's mental impairments.

Plaintiff contends that the ALJ erred in finding that Plaintiff has the RFC to perform sedentary work with only moderate limitations in her ability to maintain attention and concentration for extended periods of time. The ALJ did not point to any evidentiary support for his conclusion that Plaintiff's "mental impairments moderately limit her ability to maintain attention and concentration for extended periods of time." Presumably, the ALJ was relying on the non-examining state agency doctors. (R. 175-87, 192-205.) However, the non-examining state agency doctors identified numerous additional areas in which Plaintiff was moderately limited – i.e. maintaining concentration, persistence, or pace; understanding and remembering detailed instructions; carrying out detailed instructions; completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; setting realistic goals or making plans independently of others; and responding appropriately to changes in the work setting. (R. 188-91, 192-205.) The ALJ did not discuss any of these other limitations, nor did he discuss what impact they would have on Plaintiff's ability to perform sedentary work.

Moreover, in concluding that Plaintiff's mental impairments only limited her ability to maintain attention and concentration for extended periods of time, the ALJ did not discuss what weight he accorded the opinions of Dr. Friedenberg, Dr. Oatley and Dr. Bojarski, all of whom noted limitations resulting from Plaintiff's mental impairments. Dr.

14

Friedenberg noted that Plaintiff had difficulty understanding questions put to her by the examiner and he opined that Plaintiff's overall memory and concentration were "significantly impaired"; Dr. Oatley's testing revealed memory deficiencies; and Dr. Bojarski opined that Plaintiff was moderately limited in her ability to understand and remember detailed instructions, carry out detailed instructions, and make judgments on simple work-related decisions. (R. 313.)

In addition, the ALJ rejected Plaintiff's allegations of mental impairments because she did not receive regular treatment and was prescribed medication by her medical doctors and that on at least one occasion, she admitted that she was not taking her medication for anxiety and suffered an anxiety attack. Likewise, the ALJ rejected Plaintiff's allegations of cognitive limitations due to memory deficits because "she has not sought treatment and her functioning may be affected by the medication she takes" and there "are no medical records supporting the degree of cognitive limitations." (R. 23.) However, while Plaintiff did not seek treatment from mental health professionals, she was treated for almost five years by Dr. Zwolinski for depression, anxiety and panic attacks. Moreover, Plaintiff's allegations of cognitive limitations are supported by the opinions of Dr. Friedenberg, Dr. Oatley, Dr. Bojarski and the non-examining state agency doctors.[25]

---

[25] Plaintiff also argues that the ALJ erred in his evaluation of Plaintiff's subjective complaints because he found that Plaintiff's credibility was "further diminished by her inconsistent statements regarding her activities of daily living that include minimal activity including caring for a dog." The Court agrees that minimal daily activities are not dispositive evidence of one's ability to perform sedentary work; however, the ALJ did not rely solely upon Plaintiff's activities of daily living and he articulated numerous other reasons for discrediting Plaintiff's testimony. Other than as discussed above, the Court finds no error in the ALJ's analysis of Plaintiff's subjective complaints.

15

Accordingly, the ALJ's conclusion that the only limitation caused by Plaintiff's mental impairments was her ability to maintain attention and concentration for extended periods of time was not supported by substantial record evidence.

As a result of the ALJ's failure at Step 4 to properly evaluate the impact of Plaintiff's mental impairments, the ALJ also erred at Step 5 by relying solely on the grids without the testimony of a vocational expert. Because the ALJ found that Plaintiff could not return to his past relevant work, the burden of proof shifted to the Commissioner to establish that the claimant could perform other work that exists in the national economy.[26] The burden of showing by substantial evidence that a person who can no longer perform his former job can engage in other substantial gainful activity is in almost all cases satisfied only through the use of vocational expert testimony.[27] It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.[28] Exclusive reliance on the "grids" is not appropriate "*either* when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that

---

[26] See Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

[27] See id.

[28] See id.

16

significantly limit basic work skills."[29] If either condition exists, the ALJ is required to consult a vocational expert.[30]

In this case, the ALJ was required to consult a vocational expert based on the nonexertional limitations resulting from Plaintiff's mental impairments. The ALJ concluded that Plaintiff could perform a "substantial range of sedentary work" and that the additional limitations had little or no effect on the occupational base of unskilled sedentary work. Then, using Rules 201.18-201.19 of the grids, the ALJ concluded that Plaintiff was not disabled.   However, the ALJ's conclusion was error because he failed to consider all of the non-exertional limitations resulting from Plaintiff's mental impairments.

Accordingly, this matter is due to be remanded for the ALJ to reconsider Plaintiff's RFC in light of the limitations resulting from Plaintiff's mental impairments and determine, with the testimony of a vocational expert, whether Plaintiff can perform other work which exists in the national economy.  Additionally, on remand because the Plaintiff remained insured through June 30, 2007 (R. 65) – and not through June 30, 2006 as the ALJ erroneously found (R. 14) - the ALJ should also consider the medical evidence of record for the time period after June 30, 2006.

---

[29] See Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004)(quoting Francis v. Heckler, 749 F.2d 2565, 1566 (11th Cir. 1985.)

[30] See id.

## V. RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **REVERSED AND REMANDED** under sentence four of 42 U.S.C. § 405(g) to the Commissioner for the Administrative Law Judge to reconsider Plaintiff's RFC in light of her mental impairments; to reconsider with vocational expert testimony, whether Plaintiff can perform other work in the national economy; and to conduct any additional proceedings the Commissioner deems appropriate.

**IN CHAMBERS** in Ocala, Florida, on February 24, 2009.

*[signature]*
GARY R. JONES
United States Magistrate Judge

Copies to:
  The Honorable Wm. Terrell Hodges
  Senior United States District Judge

  Counsel of Record